UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
                                                                      :
LORRAINE DAMATO, LOUIS MCLAUGHLIN,          :        13-CV-994 (ARR)(RML)
KATHLEEN MCNALLY, MICHAEL NASOFF, DIANA     :
MANWARING, NATALIE LENETT, BLEU             :        OPINION AND ORDER
MARAQUIN, CHRIS YOOSEFI, and GABRIEL        :
BROOKS,                                     :
                                            :
Individually and on Behalf of All Others Similarly   :
Situated,                                   :
                    Plaintiffs,             :
                                            :
      -against-                             :
                                            :
TIME WARNER CABLE, INC.,                    :
                                            :
                    Defendant.              :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

        Plaintiffs in this putative class action suit subscribed to defendant Time Warner Cable,

Inc.'s ("TWC" or "the company") cable internet service in New York, New Jersey, and

California.  As part of TWC's service, the company provided a modem to its subscribers.  In

October 2012, the company instituted a "Modem Lease Fee," which required subscribers to pay

$3.95 per month to lease TWC's modem.  Plaintiffs brought suit on their own behalf and on

behalf of others similarly situated, challenging the Modem Lease Fee as a breach of TWC's

Residential Services Subscriber Agreement ("the Subscriber Agreement") and a violation of

multiple state consumer protection laws.  Plaintiffs sought damages as well as injunctive and

declaratory relief.  Before the court is TWC's motion to stay or dismiss the action pending

arbitration, based on the binding arbitration clause contained within the Subscriber Agreement.

For reasons explained below, the motion is granted and the action is stayed.

**BACKGROUND**

For the purposes of the present motion, the following facts are not in dispute:  Plaintiffs'
action stems from what they term TWC's "October Surprise," a postcard sent to subscribers
around October 15, 2012, informing them that a Modem Lease Fee of $3.95 per month would
thereafter be applied to cable internet accounts that used the company's modems.  Compl., Dkt.
#1, ¶ 37.  Plaintiffs allege that the Modem Lease Fee was not really a lease fee at all, but rather
was a veiled price hike for internet service.  Id. ¶¶ 40-41.  Moreover, plaintiffs allege, TWC
engaged in various tactics meant to conceal from subscribers the imposition of the fee, the
reasons for the fee, and how to avoid the fee.  Id. ¶¶ 42-46.  According to plaintiffs, the manner
in which TWC instituted the fee violated numerous promises TWC made to its customers,
including a promise to give thirty-days notice in advance of any price or service change, id. ¶¶
47-50, a promise not to charge for its modems, id. ¶¶ 54-58, a promise that TWC would only
charge fees for "new or additional equipment," id. ¶¶ 59-61, and a promise not to raise prices for
customers subject to a set price plan, id. ¶¶ 65-69.  Plaintiffs also complain that, under the terms
of the Subscriber Agreement, TWC could not change its policy with respect to modems without
amending that agreement, which it failed to do.  Id. ¶ 79-81.  In addition to these and other
claims for breach of contract, plaintiffs bring statutory claims for relief under the New York
Consumer Fraud Statute, N.Y. Gen. Bus. L. § 349, the New Jersey Consumer Fraud Act, N.J.
Stat. Ann. § 56:8-19, the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and
the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.  The merits of these
claims are not currently before the court.

It is undisputed that all subscribers to TWC's internet service are subject to the
Subscriber Agreement.  It is also undisputed that the current version of the Subscriber

Agreement contains a bold, all-caps notice on the first page that reads as follows:

>**THIS AGREEMENT CONTAINS A BINDING ARBITRATION CLAUSE,[]
>WHICH SAYS THAT YOU AND TWC . . . AGREE TO RESOLVE
>CERTAIN DISPUTES THROUGH ARBITRATION.  YOU HAVE THE
>RIGHT TO OPT OUT OF THIS PART OF THE AGREEMENT.  SEE
>SECTION 15.**

Compl., Ex. B, Dkt. #1, at 58.  A majority of the plaintiffs dispute, however, that they received a

version of the Subscriber Agreement with this notification.  They allege that mention of the

arbitration clause was buried in a one-time notification on the second page of their bill sent in

May 2010, which stated, "You have a new Time Warner cable subscriber agreement, which

contains an arbitration clause and other important terms.  You can review the new agreement

and, if you wish, 'opt out' of the arbitration clause at [TWC's website]"  Pls.' Mem. of Law in

Opp'n to Def.'s Mot. to Stay or Dismiss This Action Pending Arbitration ("Pls.' Opp'n Mem.")

53 n.20; see Decl. of Steven L. Wittels in Opp'n to Def.'s Mot. to Stay or Dismiss Pending

Arbitration ("Wittels Decl."), Dkt. #16, Ex. 43.  The bill notice omitted the fact that there was a

time limitation of thirty days in which customers could opt out of the arbitration agreement.

Several of the plaintiffs allege they were altogether unaware of the arbitration clause.  See

Wittels Decl., Exs. 37, 38, 45, 47.[1]  In any case, it is undisputed that § 15 of the current

Subscriber Agreement reads as follows:

>**15.  Unless you Opt Out, You are Agreeing to Resolve Certain Disputes
>Through Arbitration.**

---

[1]Plaintiffs do not, however, assert that they were not subject to any arbitration agreement
prior to 2010.  Indeed, although not specifically contained in the record, it is clear that prior
iterations of TWC's Subscriber Agreement contained a binding arbitration clause (albeit without
the class waiver and other features of the current agreement).  See Bar-Ayal v. Time Warner
Cable Inc., No. 03 CV 9905(KMW), 2006 WL 2990032, at *3, *7 (S.D.N.Y. Oct. 16, 2006)
(quoting binding arbitration clause contained in TWC customer agreement in effect in July
2001).

(a) Our goal is resolve Disputes[2] fairly and quickly.  However, if we cannot resolve a Dispute with you, then, except as described elsewhere in Section 15, each of us agrees to submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution.  As an alternative, you may bring your claim in your local small claims[] court, if its rules permit it.

(b) You may bring claims only on your own behalf, and not on behalf of any official or other person, or any class of people.  Only claims for money damages may be submitted to arbitration; claims for injunctive orders or similar relief must be brought in a court.  You may not combine a claim that is subject to arbitration under this Agreement with a claim that is not eligible for arbitration under this Agreement.  The arbitrator will decide whether a dispute can be arbitrated.

(c) The arbitrator will issue a decision in writing but will not provide an explanation for the award unless you or TWC requests one.  Any arbitration award over $75,000 may be appealed to a three-person panel appointed by the same arbitration institution that rendered the original award.  Any such appeal must be filed within 30 days and the appeal will be decided, based on the institution's appeal rules, within 120 days of filing.

(d) Before you initiate an arbitration proceeding, you may request that we advance on your behalf (1) the arbitration filing fees (but only to the extent they exceed your local small claims court filing fees) and (2) the portion of the arbitrator's costs for which you would normally be responsible.  If TWC wins the arbitration, you will reimburse us for these advances.  TWC will, of course, pay any fees or costs required under the law where you live.

(e) You may opt out of this agreement's arbitration provision.  If you do so, neither you nor TWC can require the other to participate in an arbitration proceeding.  To opt out, you must notify TWC in writing within 30 days of the date that you first became subject to this arbitration provision. . . .

(f) If the prohibition against class action and other claims brought on behalf of third parties contained in Section 15(b) is found to be unenforceable, then all of Section 15 will be null and void.  This arbitration clause will survive the termination of your Services.

---

[2]"Dispute" is capitalized to indicate that it is defined in § 16 of the Subscriber Agreement, as follows: "[']Dispute' means any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement."  Compl., Ex. B, Dkt. #1, at 67.

Compl., Ex. B, Dkt. #1, at 65-66 (citations to the arbitration clause will hereinafter be noted as "Subscriber Agreement § 15").

The Subscriber Agreement contains several other provisions that are relevant here. First, § 8 of the agreement provides that TWC may change its agreements with its customers or its prices "by amending the on-line version of the relevant document." Id. at 63. The section provides that if a customer "continue[s] to use the Services following any change in our Customer Agreements, prices or other polices, [the customer] will have accepted the changes (in other words, made them legally binding)." Id. If the customer does not agree to the changes, she may contact her local TWC office and cancel her service. Id. Section 8 also provides that "[a]ny changes to our Customer Agreements are intended to be prospective only. In other words, the amended version of the relevant document only becomes binding on you as of the date that we make the change." Id. Second, § 10 of the Subscriber Agreement limits TWC's liability as follows: "EXCEPT FOR [certain service credits described in previous sections], TWC WILL NOT BE LIABLE TO YOU FOR ANY LOSSES OR DAMAGES OF ANY KIND BASED ON BREACHES OF THIS AGREEMENT OR YOUR RELATIONSHIP WITH US, REGARDLESS OF THE BASIS OF ANY CLAIM." Id. at 64. Third, the Subscriber Agreement limits the time in which a customer (but not TWC) can bring a legal action to one year. Id. at 65.

TWC now moves to compel arbitration based on the Subscriber Agreement.

## DISCUSSION

I. *Legal Principles*

The Federal Arbitration Act ("FAA") was passed "in response to widespread judicial hostility to arbitration." Am. Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2308-09

(2013).  It provides:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The Supreme Court has described this provision as reflecting "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal citations and quotation marks omitted).  The strength of this federal policy, the Second Circuit has commented, is "difficult to overstate."  Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006).  The savings clause of § 2, however, "permits agreements to arbitrate to be invalidated by generally applicable contract defenses such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  Concepcion, 131 S. Ct. at 1746 (internal quotation marks omitted).  In two notable recent cases, the Supreme Court held that a defense of unconscionability applied to a class action waiver in an arbitration agreement was preempted by the FAA, id. at 1753, and that the prohibitive cost of proving a case in individual arbitration did not render the class action waiver in an arbitration clause unenforceable, Am. Express, 133 S. Ct. at 2311.

The Supreme Court has also held that there are two types of challenges under the FAA § 2:  "One type challenges specifically the validity of the agreement to arbitrate," while "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  Buckeye Check Cashing,

Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  Claims of the first type may be adjudicated by the

court.  Id. at 445; accord Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04

(1967).  However, "a party's challenge to another provision of the contract, or to the contract as

a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  Rent-A-

Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010).  Accordingly, the Court's

precedents instruct that when considering challenges to the validity of the agreement, the court

should sever the arbitration clause from the rest of the contract, and determine whether the party

resisting arbitration's challenge is to the arbitration clause itself or the contract as a whole.  Id.;

Buckeye, 546 U.S. at 445.  If the party's challenge concerns the contract as a whole, the

challenge must be decided by the arbitrator.  Id. at 446.

     The FAA further requires:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such
> arbitration, the court in which such suit is pending, upon being satisfied that the
> issue involved in such suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial of the action
> until such arbitration has been had in accordance with the terms of the
> agreement . . . .

9 U.S.C. § 3.  Thus, a stay is mandatory if the court finds that the issue involved in the case is

subject to the arbitration agreement.

II.    *Application*

     Plaintiffs do not contend that their claim for relief falls outside the scope of the

agreement to arbitrate.  Instead, they argue that the arbitration clause is invalid "upon such

grounds as exist at law or in equity," 9 U.S.C. § 2, namely, that the clause is illusory and

unconscionable.  As will be explained more fully below, however, plaintiffs' arguments chiefly

attack the validity of the contract as a whole, and therefore must be determined by the arbitrator

in the first instance.  Their arguments specifically challenging the arbitration clause are either

foreclosed by recent Supreme Court precedent or otherwise unavailing.

        a.      Judicial Estoppel

        Before discussing plaintiffs' invalidity arguments, the court must briefly address their

claim that TWC should be judicially estopped from invoking the arbitration clause.  Plaintiffs

expend a great deal of ink describing numerous other lawsuits against TWC in which the

company has not invoked the binding arbitration clause, and has chosen instead to litigate.  Pls.'

Opp'n Mem. 6-28.  Plaintiffs accuse TWC and its counsel of "underhanded conduct," id. at 1,

"play[ing] fast and loose with the courts," id., and "gamesmanship," id. at 4, and urge the court

to exercise its equitable power of judicial estoppel to prevent TWC from arguing here that the

arbitration clause is, in fact, binding, id. 20-21 (citing In re Adelphia Recovery Trust, 634 F.3d

678, 696 (2d Cir. 2011)).  Plaintiffs' argument is totally without merit, however, as there is

nothing inconsistent about seeking to compel arbitration in one case and litigating in another

case, since a party can waive its right to compel arbitration.  See Doctor's Associates, Inc. v.

Distajo, 107 F.3d 126, 130 (2d Cir. 1997).  While a district court may consider a contractual

right to compel arbitration waived when the party seeking to enforce the arbitration agreement

has participated in litigation on the same dispute, Bell v. Cendant Corp., 293 F.3d 563, 569 (2d

Cir. 2002), plaintiffs point to no other case involving the dispute at issue here.[3]  Cf. Doctor's

Associates, 107 F.3d at 131 ("We have often stated the general rule that waiver of the right to

arbitrate occurs when a party engages in protracted litigation that results in prejudice to the

opposing party.") (emphasis added) (internal quotation marks omitted).  Plaintiffs' argument for

---

       [3]Moreover, waiver is ordinarily "a matter to be decided by the arbitrator."  Id.

judicial estoppel is little more than invective.  The court accordingly declines the invitation to exercise its equitable power of judicial estoppel.

b.      Illusoriness

Moving on to plaintiffs' more serious arguments, plaintiffs first contend that the arbitration clause is invalid because it is illusory.  Pls.' Opp'n Mem. 29.  An illusory promise, "that is, a promise merely in form, but in actuality not promising anything, . . . cannot serve as consideration."  3 Richard A. Lord, Williston on Contracts § 7:7 (4th ed. 2013).  Plaintiffs argue that TWC's promise to arbitrate is illusory because § 8 of the Subscriber Agreement gives TWC the power to amend the arbitration clause unilaterally.  Consequently, plaintiffs argue, TWC has not bound itself to the arbitration clause, so the agreement to arbitrate is not supported by mutual obligation.  Pls.' Opp'n Mem. 29-30.  If that were the case, there would be no legally binding promise to arbitrate for the court to enforce.  See Wagman v. Chater, No. 94 Civ. 7243 (DC), 1996 WL 219646, at *4 (S.D.N.Y. May 1, 1996) (noting that, under New York law, an agreement that is illusory is not enforceable).

The court has no occasion to consider the merits of this argument because, as the argument relates to a potential defect in the contract as a whole, and not specifically to the arbitration clause, the matter must be decided by the arbitrator.  See Buckeye, 546 U.S. at 446. Plaintiffs cite cases where, instead of sending the matter to the arbitrator, the court refused to enforce an arbitration agreement based on the ability of one party to the contract to amend the contract's terms.  Pls.' Opp'n Mem. 30 (citing In re Zappos.com, Inc. Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012); Grosvenor v. Qwest Corp., 854 F. Supp. 2d 1021, 1033-34 (D. Colo. 2012)).  These cases fail to persuade.  The first case plaintiffs cite, In re Zappos.com, contains no mention of the Supreme Court's decisions in Prima-Paint,

Buckeye, or Rent-A-Center.  The In re Zappos.com court thus did not consider any of the

controlling precedent on the question of who should adjudicate the illusoriness of the contract.[4]

By contrast, the defendant in Grosvenor did argue that Prima-Paint and Rent-A-Center (but

apparently not Buckeye) required that the question of the illusoriness of the contract be decided

by the arbitrator in the first instance.  See 854 F. Supp. 2d at 1032-33.  The District Court for the

District of Colorado declined to apply those cases.  Id. at 1033.  In so doing, however, the court

relied upon a Tenth Circuit case (which was binding upon the District of Colorado) that itself did

not mention Prima-Paint[5] and did not address whether the arbitrator should decide the question.

Id. (citing Dumais v. Am. Golf Corp., 299 F.3d 1216, 1218-20 (10th Cir. 2000)).  Thus, although

In re Zappos.com and especially Grosvenor  contain similar facts to the case at bar, these cases

do not adequately grapple with the question of who should decide the question of the illusoriness

of the contract based on the Supreme Court's precedents.  The court therefore finds these cases

unpersuasive.

    More compelling are cases that apply the Supreme Court's precedents and

overwhelmingly reach the conclusion that the issue of illusoriness of the whole contract must be

resolved by the arbitrator.  In Curry v. Volt Info. Sciences, Inc., No. 07 Civ. 7158(DLC), 2008

WL 719214 (S.D.N.Y. Mar. 18, 2008), for example, plaintiff and defendant entered into an

---

[4]The post-Buckeye cases cited by the In re Zappos.com court also, for the most part, do
not mention or engage with this line of Supreme Court precedent.  See Douglas v. Johnson Real
Estates Investors, LLC, 470 F. App'x 823, 824-25 (11th Cir. 2012); Morrison v. Amway Corp.,
517 F.3d 248, 257 (5th Cir. 2008); but see Harris v. Blockbuster Inc., 622 F. Supp. 2d 396, 398-
99 (N.D. Tex. 2009) (holding Buckeye does not bar court from considering argument that
unilateral ability to modify contract rendered arbitration clause illusory, but relying primarily on
Morrison, 517 F.3d at 255-58).

[5]The Tenth Circuit's case predated Buckeye and Rent-A-Center.

10

employment agreement that contained an arbitration provision.  Id. at *1.  The agreement both stated that it was "not a contract of employment" and reserved the right of defendant to "change, interpret or cancel any of its . . . personnel policies, benefits or practices without advanced notice."  Id. at *2 (internal quotation marks omitted).  Following his termination, plaintiff brought suit and defendant moved to compel arbitration.  Id.  Plaintiff argued that the court should not enforce the arbitration agreement since the disclaimer that the agreement was "not a contract" and the unilateral modification clause rendered the agreement illusory.  Id. at *2-3.  Judge Cote, citing Buckeye, held that "[b]ecause Curry's challenge is to the contract as a whole, his arguments against enforceablility . . . must be decided by the arbitrator."  Id. at *3.  On the issue of a unilateral modification clause potentially rendering the contract illusory, the case at bar is on all fours with Curry.[6]  This court finds its reasoning and that of other cases applying the Supreme Court's precedents persuasive.  See, e.g., Diversified Roofing Corp. v. Pulte Home Corp., No. CV12-1880 PHX DGC, 2012 WL 6628962, at *5 (D. Ariz. Dec. 19, 2012) ("Because

_____

[6]If anything, the argument against enforcement of the arbitration clause was stronger in Curry given the disclaimer that the employment agreement was "not a contract," suggesting the contract was void ab initio.  The Second Circuit has interpreted the Supreme Court's precedents in this area as applying only to voidable contracts, rather than void contracts.  See Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 n.5 (2d Cir. 2009); Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 31-32 (2d Cir. 2001); cf. IpCon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 61-62 (2d Cir. 2012).  While an illusory contract is void for lack of consideration, rather than voidable, see 3 Williston on Contracts § 7:11 ("Where no consideration exists, and is required, the lack of consideration results in no contract being formed . . . ."), plaintiffs here do not argue that the contract itself is void.  Nor can they, since their primary cause of action is breach of contract, presupposing the existence of a contract supported by consideration.  See Coffer v. Serv. Asset Mgmt. Co., No. 02 Civ. 9934(DC), 2003 WL 22493425, at *3 (S.D.N.Y. Nov. 4, 2003) (holding that plaintiffs' lack of consideration argument "is inconsistent with the theory of their lawsuit," which was, in part, a breach of contract action); see also Faust Harrison Pianos Corp. v. Allegro Pianos, LLC, No. 09 Civ. 6707(ER), 2013 WL 2292050, at *11 (S.D.N.Y. May 24, 2013) (noting that under New York law, the absence of mutuality of obligation in a contract may be remedied by the subsequent conduct of the parties).

Roadrunner's lack of consideration claim goes to the validity of the Agreement and not to the validity of the arbitration provision, the Court cannot consider it."); Goldberg v. C.B. Richard Ellis, Inc., No. 4:11-cv-02237-RBH, 2012 WL 6522741, at *4 (D.S.C. Dec. 14, 2012) (argument that contract was illusory because it allowed for modification was for arbitrator to resolve); Randazzo v. Anchen Pharm., Inc., No. 4:12-CV-999 CAS, 2012 WL 5051023, at *7 (E.D. Mo. Oct. 18, 2012) (argument that contract was not supported by consideration was for arbitrator to decide); Metcalf v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 768 F. Supp. 2d 762, 772 (M.D. Pa. 2011) ("[B]y virtue of substantive federal law the arbitration clause is severable from the rest of the agreement and any deficiencies contained therein, including an alleged lack of consideration."); Adler v. Dell, Inc., No. 08-CV-13170, 2008 WL 5351042, at *12 (E.D. Mich. Dec. 18, 2008) ("Adler also argues that the contract is illusory, and thus void, because it contains the following clause: '[t]hese terms are conditions are subject to change without prior written notice at any time, in Dell's sole discretion.' . . . [T]he question of whether the entire contract is illusory . . . remains an issue for the arbitrator to decide.").

Plaintiffs' argument is that by retaining power to change the terms of the Subscriber Agreement unilaterally, TWC rendered its obligations under the agreement illusory. Because this argument challenges the validity of the contract as a whole, and not specifically the arbitration agreement, the matter must be referred for resolution to the arbitrator.

    c.    Unconscionability

Next, plaintiffs claim the arbitration clause is unconscionable under California, New Jersey, and New York law, respectively. In all three states, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. See Harrington v. Atl. Sounding Co., 602 F.3d 113, 125 (2d Cir. 2010) ("New Jersey [c]ourts generally have applied a sliding-

scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability.") (alteration in original) (internal quotation marks omitted); Newton v. Am. Debt Servs., Inc., 854 F. Supp. 2d 712, 722-23 (N.D. Cal. 2012) ("In California, a contractual clause is unenforceable if it is both procedurally and substantively unconscionable. . . . [B]oth procedural and substantive unconscionability must be present . . . ."); Nayal v. HIP Network Servs IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (under New York law, "[g]enerally, there must be a showing that . . . a contract is both procedurally and substantively unconscionable").  Plaintiffs put forward largely the same grounds for finding unconscionability under each state's law.

Because plaintiffs first assert grounds of substantive unconscionability, the court will first address their substantive unconscionability arguments.  "Substantive unconscionability focuses on the effects of the contractual terms and whether they are overly harsh or one-sided."  Newton, 854 F. Supp. 2d at 724 (stating California law); accord Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) (substantive unconscionability under New York law looks at whether contract terms are "unreasonably favorable to . . . [one] party"); Travelodge Hotels, Inc. v. Honeysuckle Enter., Inc., 357 F. Supp. 2d 788, 801 (D.N.J. 2005) ("Substantive unconscionability [under New Jersey law] describes an exchange of promises that is so one-sided as to 'shock the conscience' of the court.").  As plaintiffs' arguments are most fully explicated within the context of California law, the court addresses them primarily in that context, and applies New Jersey and New York law only where such application might impact the outcome of the analysis.

13

1.      The arbitration clause is unconscionably broad

Plaintiffs argue first that the arbitration clause is unconscionable because it is too broad.

Pls.' Opp'n Mem. 35.  They point to the fact that the clause governs all "disputes," including

those that occur prior to the date of the Subscriber Agreement, and also survives the termination

of services.  Id.  Therefore, according to plaintiffs, "if a subscriber switches to Verizon's FIOS

service and 10 years later has a vehicle accident with a TWC truck, he or she would still be

bound to arbitrate under TWC's absurdly broad and grossly one-sided arbitration clause."  Id.

California courts have recognized an arbitration clause may be unconscionably broad

where its scope exceeds reasonable expectations, as in a warranty agreement that covered not

just the warranty at issue, but all disputes arising between the contracting parties.  See Lima v.

Gateway, Inc., 886 F. Supp. 2d 1170, 1183 (C.D. Cal. 2012); Bruni v. Diddion, 160 Cal. App.

4th 1272, 1294 (2008).  But here, plaintiffs' dispute with TWC relates to the cost of its internet

service, which is plainly within the scope of the Subscriber Agreement.  While it is up to the

arbitrator to determine the scope of the agreement, see Subscriber Agreement § 15(b), plaintiffs

have not demonstrated that the arbitration clause would ensnare disputes beyond reasonable

expectations – the hypothetical TWC truck accident notwithstanding.  To the contrary, the

instant dispute is precisely what one would reasonably expect would fall under the terms of the

arbitration clause.  Moreover, while the temporal limits of the clause may be far-reaching (or

even boundless), they are not one-sided, let alone grossly so.  They apply equally to both sides of

Subscriber Agreement: TWC and its customers.  Accordingly, plaintiffs have failed to show

substantive unconscionability based on the breadth of the arbitration clause.

2.      The arbitration clause is unconscionable because it is illusory

Plaintiffs next argue that TWC's unilateral ability to change the terms of the Subscriber

Agreement renders the arbitration clause unconscionable.  Pls.' Opp'n Mem. 36-37.  This

argument is simply a rehash of the illusoriness argument, which, as discussed above, challenges

the validity of the contract as a whole, and therefore must be decided by the arbitrator.

3.      The shrinking of the statute of limitations is unconscionable

Plaintiffs argue that the arbitration clause is unconscionable because § 14 of the

Subscriber Agreement limits the time in which a customer can bring a claim to one year.  Id. at

37-38.  Even assuming that such a restriction on the statute of limitations is, in fact,

unconscionable, such unconscionability would affect the entire agreement, not just the

arbitration clause.  Consequently, like the claim of illusoriness, the question of unconscionability

based on the statute of limitations must be decided by the arbitrator in the first instance.[7]  See

---

[7]The court notes that some courts have held that an unconscionable provision outside the
arbitration clause can cause the arbitration clause itself to be unconscionable when such outside
terms "were anticipated to limit the scope of the arbitration, which was the only mechanism
contemplated by the contract to resolve disputes."  Newton, 854 F. Supp. 2d at 726; accord
Jackson v. S.A.W. Entm't Ltd., 629 F. Supp. 2d 1018, 1025 n.3 (N.D. Cal. 2009).  The court
declines to follow these cases down this road for two reasons: First, the instant case is
distinguishable since the Subscriber Agreement contemplates several other mechanisms for
resolving disputes besides arbitration, including small claims court, an action in federal court for
injunctive or similar relief, and an action in federal court by a TWC customer who has opted out
of the binding arbitration clause.  Second, one of these cases criticizes the notion that a clause
outside the arbitration clause should be separated from the analysis of the arbitration clause itself
as "exalt[ing] form over substance."  Newton, 854 F. Supp 2d at 726.  Maybe so, but such
exaltation seems to be precisely what the Supreme Court has in mind in its severability doctrine.
See Rent-A-Center, 130 S. Ct. at 2778 ("[I]n an employment contract many elements of alleged
unconscionablity applicable to the entire contract (outrageously low wages for example) would
not affect the agreement to arbitrate alone.  But even where that is not the case–as in Prima Paint
itself, where the alleged fraud that induced the whole contract equally induced the agreement to
arbitrate which was part of the contract–we nonetheless require the basis of challenge to be
directed specifically to the agreement to arbitrate before the court will intervene.").

Rompalli v. Portnova, No. 09 CIV. 3083(RMB)(FM), 2010 WL 2034396, at *4 (S.D.N.Y. May 5, 2010) (because unconscionability renders a contract voidable, not void, argument that a contract containing an arbitration clause is unconscionable must be referred to arbitrator), report and recommendation adopted, 2010 WL 2034362 (S.D.N.Y. May 21, 2010).

4.    The limitation on damages is unconscionable

Like plaintiffs' argument about the statute of limitations, their argument that the arbitration clause is unconscionable because § 10 of the Subscriber Agreement limits TWC's liability attacks the validity of the contract as a whole.  Accordingly, this issue must also be decided by the arbitrator.

5.    The non-mutual limitation on plaintiffs' ability to combine claims is unconscionable

Plaintiffs argue that the arbitration clause's prohibition on combining arbitrable and non-arbitrable claims is unconscionable.  Pls.' Opp'n Mem. 40.  Plaintiffs' argument is extremely brief, but in essence it contends that the prohibition on combining claims is one-sided and therefore "eviscerates the efficiency of arbitration for consumers by forcing them into two forums."  Id.  Leaving aside the fact that this argument suggests that the arbitration clause is not broad enough, read in context, the clause's prohibition on combining claims is not one-sided. Although it contains a sentence that says, "You [i.e. the customer] may not combine a claim," Subscriber Agreement, § 15(b), the clause clearly prohibits either side from arbitrating claims for injunctive or similar relief.  Id.[8]  Thus, the limitation on combining claims applies with equal

---

[8]The provision barring combining of claims states, "The arbitrator will decide whether a dispute can be arbitrated."  Subscriber Agreement § 15(b).  This language could be read as requiring the arbitrator to decide the question of which claims are arbitrable and which are not, thus precluding the court from determining that claims for injunctive relief are outside the scope of the arbitration clause.  However, the aforementioned sentence says that the arbitrator will

force to both sides of the contract.  Moreover, there is nothing per se unconscionable about parties agreeing that certain issues will be arbitrated while others will not.  See Concepcion, 131 S. Ct. at 1748 ("[P]arties may agree to limit the issues subject to arbitration.").  The prohibition on combining claims does not render the arbitration clause unconscionable.

> 6.      The class action waiver is unconscionable because it is one-sided

Plaintiffs next argue that the arbitration clause's prohibition on bringing claims on behalf of others, including class actions, is unconscionable because it applies only to subscribers and not to TWC.  Pls.' Opp'n Mem. 41.  This argument finds itself in the cross-hairs of Concepcion. In that case, the lower courts had held that a class action waiver was unconscionable under California law.  See 131 S. Ct. at 1745.  The Supreme Court reversed, holding that California law's application of unconscionability doctrine disfavored arbitration and was therefore preempted by the FAA.  Id. at 1747-48.  The Supreme Court has thus blessed class action waivers, like the one contained in the TWC arbitration agreement.  Plaintiffs' argument that the clause is still unconscionable because it applies only to subscribers and not to TWC is unavailing.  Plaintiffs concede that TWC "has no financial incentive to bring class claims against its customers," Pls.' Opp'n Mem. 41, so, realistically, the provision applies equally to both

---

decide whether a "dispute" can be arbitrated.  "Dispute" is a term of art in the contract meaning "any dispute, claim, or controversy between [the subscriber] and TWC regarding any aspect of your relationship with us."  Id. § 16(e).  By contrast, the prohibition on combining "claims" appears to refer to different types of relief: claims for monetary damages vs. claims for injunctive and similar relief.  It is therefore unclear whether "claim" and "dispute" are intended to have the same meaning in this provision.  Questions of arbitrability should be decided by the arbitrator if, and only if, the parties express a "clear and unmistakable" intention to send them to the arbitrator.  Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 393 (2d Cir. 2011) (internal quotation marks omitted); accord First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995). Given the lack of clarity in § 15(b), the question of arbitrability of injunctive claims may be determined by the court.

parties.  Plaintiffs argue that it is "conceivable the Company might at some point join with a

third-party to sue a subscriber," id.  Such speculation about a scenario that is remote in the

extreme fails to salvage plaintiffs' argument.  Plaintiffs' attempt to evade the holding of

Concepcion falls short.

> 7.     The appeal provision is unconscionable

Plaintiffs argue that the provision limiting appeals to arbitration awards over $75,000,

while appearing neutral on its face, actually benefits TWC because an arbitral award against a

TWC customer will rarely exceed $75,000.  Pls.' Opp'n Mem. 41-42.  This argument finds some

support in cases applying California law.  See id. at 42 (citing cases).  In each of the cases cited

by plaintiffs, however, there existed a clear likelihood that a typical plaintiff's award could

exceed the monetary threshold for an appeal, while the defendant's would not.  See Trompeter v.

Ally Fin., Inc., No. C 12-00392 CW, 2012 WL 1980894, at *5 (N.D. Cal. Jun. 1, 2012)

(plaintiff's claim of vehicle defect could give rise to claim exceeding $100,000 appeal threshold,

while claim by defendant against purchaser of single vehicle unlikely to exceed threshold); Lau

v. Mercedes-Benz USA, LLC, No. CV 11-1940 MEJ, 2012 WL 370557, at *10 (N.D. Cal. Jan.

31, 2012) (in warranty action, plaintiff's claim for reimbursement in excess of $100,000

threshold; therefore, appeal permissible only if plaintiff prevails); Little v. Auto Stiegler, Inc., 63

P.3d 979, 982 (Cal. 2003) ($50,000 threshold applied to arbitration of wrongful termination of

employment contract).

Here, it is not clear how either party arbitrating a claim under the Subscriber Agreement

would ever obtain an arbitral award over $75,000.  Disputes over an individual customer's

service are unlikely to meet that threshold, whether a customer is seeking remuneration for

overpayment or TWC is seeking an award against a customer for nonpayment.  (Moreover, of

course, individual customers would not be able to increase their potential awards by combining

claims with other customers or representing a class.)  The nature of the claims arising from the

TWC Subscriber Agreement is therefore not analogous to the claims raised in the cases plaintiffs

cite.  Given that the limitation on appeals of arbitral awards is likely to apply equally to plaintiffs

and TWC, the court does not find the provision to be substantively unconscionable.

        8.     Arbitration is cost-prohibitive

Plaintiffs next argue that the arbitration procedures contemplated by the clause are much

more expensive than litigation and are cost-prohibitive for plaintiffs.  Pls.' Opp'n Mem. 42-45 &

n.17.  Plaintiffs state – and TWC does not contest – that, based on the American Arbitration

Association's ("AAA") Commercial Arbitration Rules, the cost of arbitrating a dispute for a

claim under $10,000 is $775, plus a "final fee" of $200 if the case proceeds to a hearing.  Id. at

44; see also Wittels Decl., Ex. 36.[9]  In addition, the AAA's Commercial Arbitration Rules also

require that arbitrators be compensated a rate consistent with the arbitrator's stated rate of

compensation.  Wittels Decl., Ex. 36, at 29.  Plaintiffs cite a finding by a court of the Northern

District of California that the average daily rate for arbitrator compensation in Northern

California is $1,899.  Pls.' Opp'n Mem. 45 (citing Ting v. AT&T, 182 F. Supp. 2d. 902, 917

(N.D. Cal. 2002), rev'd, in part, on other grounds, 319 F.3d 1126 (9th Cir. 2003).  The

Commercial Arbitration Rules require that the parties bear equally the expenses of the arbitrator.

Wittels Decl., Ex. 36, at 29.  Consequently, if the arbitration were to proceed under the

Commercial Arbitration Rules, the cost of one day of arbitration before an AAA arbitrator could

_____

[9]Although the arbitration clause permits subscribers to "request" that TWC advance the
costs of arbitration, Subscriber Agreement § 15(d), the clause does not obligate TWC to advance
such costs.

cost an individual plaintiff nearly $2,000.  Plaintiffs argue that the filing fees will be even higher if a consumer wishes to add claims for non-monetary relief, reaching into the tens of thousands of dollars.  Pls.' Opp'n Mem. 44.  But, as discussed above, such combining of claims is barred by the arbitration agreement, so the court cannot assume that these higher fees would be imposed.  At any rate, plaintiffs argue that the costs imposed by the Commercial Arbitration Rules are prohibitive, rendering the arbitration clause unenforceable.

The Supreme Court's leading case on evaluating an argument that arbitration is cost-prohibitive is Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79 (2000).[10]  In that case, plaintiff sued defendant lenders under the federal Truth in Lending Act.  Id. at 82-83.  When defendant sought to compel arbitration, plaintiff argued that the agreement to arbitrate was unenforceable because it was silent on the cost of arbitration, and thus did not offer her protection from potentially substantial costs of pursuing her federal statutory claims in the arbitral forum.  Id. at 89.  The Supreme Court rejected this claim, concluding,

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum.  But the record does not show that Randolph will bear such costs if she goes to arbitration.  Indeed, it contains hardly any information on the matter.

---

[10]Contrary to TWC's reply brief, Reply Mem. of Law in Further Supp. of Def.'s Mot. to Stay or Dismiss This Action Pending Arbitration 14, the holding of the Supreme Court's recent decision in Am. Express does not foreclose plaintiff's claim.  Respondents in that case resisted arbitration in an antitrust class action because the cost of expert analysis needed to prove the antitrust claims would greatly exceed the individual recovery available in arbitration.  133 S. Ct. at 2308.  The Court held that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy," id. at 2311, but cited Green Tree for the proposition that the imposition of "filing and administrative fees . . . that are so high as to make access to the forum impracticable," id. at 2310-11, could still render an arbitration agreement unenforceable.  Thus, because plaintiffs' complaint about the costs of arbitration under the Commercial Arbitration Rules have to do with access to the arbitral forum, rather than the cost of proving a claim in arbitration, such a claim falls under Green Tree, not Am. Express.

Id. at 90.  The plaintiff had only alleged a risk of prohibitive cost, which the Court held was "too speculative to justify the invalidation of the agreement."  Id. at 91.  Thus, Green Tree established that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  Id. at 92; accord In re Am. Express Merchants' Litig., 667 F.3d 204 (2d Cir. 2012), rev'd on other grounds sub nom. Am. Express v. Italian Colors Rest., 133 S. Ct. 2304.[11]

Plaintiffs here have not met their burden.  First, plaintiffs have not provided any evidence about their financial situations from which the court could determine that they cannot pay the filing fees.  Plaintiffs' affidavits state they cannot afford to pay fees in the tens of thousands of dollars, see, e.g., Wittels Decl., Exs. 45, 47, but this estimate is based on the inclusion of non-monetary claims, which, as noted above, is precluded by the arbitration agreement.  Second, plaintiffs have not established that they would not qualify for any waivers of fees.  See Valdes v. Swift Transp. Co., Inc., 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003) (noting AAA rules provide for fees to be deferred or reduced due to "extreme hardship"); see also Branco v. Norwest Bank Minnesota, N.A., 381 F. Supp. 2d 1274, 1283 (D. Haw. 2005) ("Because the Court cannot

---

[11]The court recognizes that the "effective vindication" doctrine at issue in Green Tree has been applied primarily to plaintiffs seeking to vindicate federal statutory rights, while plaintiffs here seek to vindicate state statutory and common law rights.  Arguably, such state law rights are simply preempted if they conflict with the purposes of the FAA.  See Concepcion, 131 S. Ct. at 1748; accord Am. Express, 133 S. Ct. at 2320 (Kagan, J., dissenting) (arguing that majority's reliance on Concepcion is misplaced since that case dealt with preemption of state law, while Am. Express dealt with vindication of federal statutory rights).  Nevertheless, courts have applied Green Tree's framework more generally to evaluate claims that arbitration costs render an arbitration agreement unconscionable under state law, see, e.g., Adamson v. Foulke Mgmt. Corp., No. 08-4819 (JBS/KMW), 2009 WL 5174642, at *7 (D.N.J. Dec. 18, 2009); Muhammad v. Cty. Bank of Rehoboth Beach, Del., 912 A.2d 88, 102 (N.J. 2006), and the court follows this approach here.

determine whether Plaintiffs would receive arbitration fee waivers or pro bono services, the Court cannot determine whether Plaintiffs' costs in arbitrating their claims are prohibitive. Accordingly, Plaintiffs' alleged prohibitive costs are speculative.").  Lastly, and most importantly, plaintiffs have not conclusively established that they will be subject to the fees contemplated by the Commercial Arbitration Rules at all.

While it is true that the arbitration agreement states that the Commercial Arbitration Rules shall apply, the very first of these rules contains the following caveat:

> The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods and services are nonnegotiable or primarily non-negotiable in most or all of its terms.

Wittels Decl., Ex. 36, at 16.  This caveat plainly applies to plaintiffs' situation.  Under the Supplementary Procedures for Consumer-Related Disputes ("Supplementary Procedures"), the costs of arbitration are significantly lower: For claims under $10,000, "the consumer is responsible for one-half of the arbitrator's fee up to a maximum of $125," id., Ex. 42, at 1 (emphasis added), while for claims greater than $10,000 but less than $75,000, the consumer is responsible for one-half of the arbitrator's fee up to a maximum of $375, id.[12]  These costs are, in

---

[12]The court acknowledges that some circuits, prior to the Supreme Court's decision in Green Tree, held that cost-splitting provisions were per se unenforceable.  See Shankle v. B-G Maint. Mgmt. of Col., Inc., 163 F.3d 1230, 1235 (10th Cir. 1999); Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998); Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1484 (D.C. Cir. 1997) ("[I]t is unacceptable to require Cole to pay arbitrators' fees, because such fees are unlike anything that he would have to pay to pursue his statutory claims in court.").  However, "most courts . . . that have addressed this question have held that the issue must be decided on a case-by-case basis."  Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 659 (6th Cir. 2003); accord Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002) (remanding for "discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings . . . [to] adequately establish the costs of arbitration"); Bradford v.

fact, lower than the filing fees in this district.  See Eastern District of New York, Court Fees, https://www.nyed.uscourts.gov/court-fees (June 1, 2012) (Filing Fee for Civil Case $400); see also Judicial Conference of the United States, District Court Miscellaneous Fee Schedule, http://www.uscourts.gov/FormsAndFees/Fees/DistrictCourtMiscellaneousFeeSchedule.aspx (May 1, 2013) (imposing administrative fee of $50 for filing a civil action in a district court).

Plaintiffs insist that they would not be subject to these costs, but rather the higher costs of the Commercial Arbitration Rules, because plaintiffs' counsel "was recently told by a manager in the case filing services division of the AAA that if the arbitration agreement states that the AAA Commercial Rules apply, then these are the rules that apply."  Pls.' Opp'n Mem. 45 n.17. This argument fails to take into account that the Supplementary Procedures are part of the Commercial Arbitration Rules.  While the Commercial Arbitration Rules leave the application of the Supplementary Procedures to the discretion of the arbitrator, see Wittels Decl., Ex. 36, at 16, the court will not assume that an arbitrator will irrationally refuse to apply rules designed for consumer disputes like this one, and will instead apply rules meant for disputes between businesses.  Nearly all the district courts that have examined the AAA's rules have determined that the Supplementary Procedures would likely apply to disputes between individuals consumers and corporations.  See Abreu v. Slide, Inc., No. C 12-00412 WHA, 2012 WL 2873772, at *5 (N.D. Cal. July 12, 2012) ("[P]laintiff misstates the true filing fee, which is

Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 553 (4th Cir. 2001) (citing cases that "refuse[] to conclude that fee splitting, by itself, necessarily renders an arbitration provision unenforceable"); Burden v. Check into Cash of Ky., LLC, 267 F.3d 483, 492 (6th Cir. 2001) ("As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that arbitration would be prohibitively expensive."); see also Williams v. Cigna Financial Advisors, Inc., 197 F.3d 752, 763–64 (5th Cir. 1999); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 15–16 (1st Cir. 1999); Koveleskie v. SBC Capital Markets, Inc., 167 F.3d 361, 366 (7th Cir. 1999).

actually $125.00 for consumers such as plaintiff, whose claims involve amounts less than

$10,000.  Even for consumers whose claims involve amounts up to $75,000, the filing fee cannot

exceed $375.00."); Siebert v. Amateur Athletic Union of U.S., Inc., 422 F. Supp. 2d 1033, 1042-

43 (D. Minn. 2006) (noting plaintiffs can apply for fee waivers and it is "scarcely inconceivable"

that AAA's Supplementary Procedures will be applied); Patriot Mfg., Inc. v. Dixon, 399 F. Supp.

2d 1298, 1314 & n.27 (S.D. Ala. 2005) (holding plaintiffs failed to prove they would be unable

to pay costs under AAA's Commercial Rules, and noting that plaintiffs' fears of excessive fees

"may be a mirage" since they may be entitled to reduced fees under the Supplementary

Procedures); Jones v. Genus Credit Mgmt. Corp., 353 F. Supp. 2d 598, 602 (D. Md. 2005)

("Rule R-1 of the AAA's Commercial Arbitration Rules expressly makes the AAA's

Supplementary Procedures for Consumer-Related Disputes applicable in cases such as this."); cf.

Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 873-75 (D. Or. 2002) (holding that

Supplementary Procedures "expressly apply to this dispute between a consumer and a business,"

but finding "fact that [plaintiffs] are required to pay any arbitrator's fee is sufficient to render the

obligation unconscionable"); but see Comb v. PayPal, Inc., 218 F. Supp. 2d 1165, 1176 (N.D.

Cal. 2002) (holding arbitration clause stating that AAA Commercial Rules apply undercut

defendant's argument that the Supplementary Procedures would apply).

Plaintiffs have thus failed to establish that they will be subject to the substantial costs of

the Commercial Arbitration Rules, and that they will be unable to afford the reduced costs

contemplated by the Supplementary Procedures, which, to repeat, are less than the cost of filing

a case in federal court.  At most, plaintiffs have raised the possibility that they will face

prohibitively high costs.  As Green Tree makes clear, however, the mere "risk that [plaintiffs]

will be saddled with prohibitive costs is too speculative to justify the invalidation of an

arbitration agreement."  531 U.S. at 91 (internal quotation marks omitted).  Accordingly, plaintiffs have failed to establish that the arbitration agreement is unconscionable because of the cost of arbitration.

9.  The indefiniteness of the cost of arbitration places a greater burden on plaintiffs than TWC

Plaintiffs next argue that the indefiniteness of the cost of arbitration places a greater burden on plaintiffs than TWC, thus rendering the arbitration clause unconscionable.  Pls.' Opp'n Mem. 46-47.  As just discussed at length, the Supreme Court rejected precisely this argument – that uncertainty about the costs of arbitration rendered an agreement to arbitrate unenforceable – in Green Tree.  See 531 U.S. at 91.  This slight variation on plaintiffs' previous argument therefore fails.

10.  The requirement that arbitration be confidential is unconscionable

Plaintiffs' argument that the American Arbitration Association's rule requiring arbitration to be confidential, Pls.' Opp'n Mem. 47-48, is foreclosed by Concepcion.  The Supreme Court stated in that case, "The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute.  It can be specified, for example, that the decisionmaker be a specialist in the relevant field, or that proceedings be kept confidential to protect trade secrets."  131 S. Ct. at 1749 (emphasis added).  While the Court did not address directly a claim that an arbitration clause was unconscionable because of a requirement of confidentiality, the writing is on the wall: the confidentiality of proceedings does not, by itself, render an agreement to arbitrate unconscionable.

11.  The requirement that plaintiffs first arbitrate injunctive claims and then pursue them in court is unconscionable

Plaintiff complain that they will first have to seek injunctive relief in arbitration before they can seek such relief in court based on a stray remark in defendant's brief suggesting that injunctive relief is within the purview of the arbitrator.  Pls.' Opp'n Mem. 49 (citing Mem. of Law in Supp. of Def.'s Mot. to Stay or Dismiss This Action Pending Arbitration 3 n.2).  As the court has already determined, however, the plain meaning of the arbitration clause exempts claims for injunctive relief from arbitration.  See Subscriber Agreement § 15(b); see also Concepcion, 131 S. Ct. at 1748 ("[P]arties may agree to limit the issues subject to arbitration.").  To the extent plaintiff's complaint is that pursuing claims in court after arbitration is concluded is unduly burdensome, that burden is a function not of the TWC arbitration clause, but of the FAA itself.  See 9 U.S.C. § 3 (court "shall . . . stay the action until such arbitration has been had in accordance with the agreement) (emphasis added).  Therefore, even assuming arguendo that such a requirement were unconscionable under state law, the express requirement of the FAA would trump such an application of state law.  See Concepcion, 131 S. Ct. at 1747.

\* \* \*

Plaintiffs have failed to establish that the arbitration agreement is substantively unconscionable.  Because both substantive and procedural unconscionability must be present to render a contract unenforceable, the court does not address procedural unconscionability.

**CONCLUSION**

For the foregoing reasons, defendant's motion is granted.  The action is stayed pending

arbitration of plaintiffs' claims for money damages.  <u>See</u> 9 U.S.C. § 3.

SO ORDERED.

/s/

Allyne R. Ross
United States District Judge

Dated:        July 30, 2013
              Brooklyn, New York